UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DARRELL HAGGOOD, JASON NATHANIEL,
and SHAKEERA HODGE

Docket No.:14-CV-0341 (SJF)(AKT)

Plaintiffs,

**AMENDED COMPLAINT**

-against-

RUBIN & ROTHMAN, LLC, MARY LACOSTE,
and KATHIE RUSSO,

Defendants.
-----------------------------------------------------------x

Plaintiffs Darrell Haggood, Jason Nathaniel, and Shakeera Hodge (collectively "Plaintiffs"),

by and through their attorneys Frank & Associates, P.C., bring this action against Defendants

Rubin & Rothman, LLC ("Defendant R&R"), Mary Lacoste, and Kathie Russo (collectively

"Defendants"), and respectfully allege as follows:

## INTRODUCTION

1.      Plaintiffs bring this action under Title VII of the Civil Rights Act of 1964, as

amended ("Title VII"), 42 U.S.C. 2000e, *et. seq.*; Title I of the Civil Rights Act of 1991, 42

U.S.C § 1981a, ("1981") *et. seq.*; and the New York State Human Rights Law ("NYSHRL"),

N.Y. Exec. L. § 296, *et. seq.* Defendants engaged in unlawful employment practices on the basis

of race and allowed a hostile work environment to exist in violation of Title VII, Section 1981,

and the NYSHRL.

2.      Plaintiff Hodge was subjected to racial harassment by Defendants' personnel,

including, but not limited to, racial slurs, epithets, jokes, and comments throughout the course of

her employment.   She further suffered continuous harassment and disparate treatment by

management personnel because she is African American, which created a hostile work environment.

3. Plaintiffs Haggood and Nathaniel suffered continuous harassment and disparate treatment by management personnel, because they are African American. The harassment and disparate treatment were continuous and were not remedied by Defendants despite the formal complaints made by Plaintiffs Haggood and Nathaniel and other African American employees who suffered harassment and disparate treatment.

4. Defendants had actual and constructive notice of the hostile work environment, harassment, and disparate treatment and failed to adequately respond. Moreover, Defendants retaliated against Plaintiffs for opposing and making complaints of racial harassment.

## JURISDICTION AND VENUE

5. This court has jurisdiction over all federal law claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367.

6. This action properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because the events or omissions giving rise to Plaintiffs' claims for unlawful employment practices occurred in the County of Suffolk, State of New York.

7. Plaintiff Haggood filed a timely charge of discrimination based on race with the Equal Employment Opportunity Commission, charge No. 520-2013-01839, and brings this action within 90 days after receipt of a Notice of Right to Sue, dated October 22, 2013.

8. Plaintiff Hodge filed a timely charge of discrimination based on race with the Equal Employment Opportunity Commission, charge No. 520-2013-00640, and brings this action within 90 days after receipt of a Notice of Right to Sue, dated October 22, 2013.

9.     Plaintiff Nathaniel filed a timely charge of discrimination based on race with the Equal Employment Opportunity Commission, charge No. 520-2013-01517, and brings this action within 90 days after receipt of a Notice of Right to Sue, dated October 22, 2013.

## PARTIES

10.    Plaintiff Haggood is a resident of the State of New York, County of Nassau

11.    Plaintiff Nathaniel is a resident of the State of New York, County of Nassau.

12.    Plaintiff Hodge is a resident of the State of New York, County of Suffolk.

13.    At all times relevant to the Complaint, Plaintiffs were "employees" within the meaning of 42 U.S.C. § 2000e and "persons" within the meaning of New York Exec. L. § 292 (1).

14.    At all times relevant to the Complaint, Defendant R&R, Rubin & Rothman, LLC, was and is a limited liability corporation duly formed under and by virtue of the laws of the State of New York and is authorized to do business in the State of New York. Defendant R&R's principal place of business is located at 1787 Veterans Highway, Islandia, New York 11749.

15.    At all times relevant to the Complaint, Defendant R&R has been an "employer" within the meaning of 42 U.S.C. § 2000e and N.Y. Exec. L. § 292(5).

16.    Upon information and belief, and at all times relevant to the Complaint, Defendant R&R employed more than fifteen (15) employees.

17.    At all times relevant to the Complaint, Defendant Mary Lacoste was and is Defendant R&R's Director of Operations.

18.    At all times relevant to the Complaint, Defendant Kathie Russo was and is Defendant R&R's Collection Floor Manager.

## STATEMENT OF FACTS

19.     Defendant R&R is a consumer collection law firm located in Islandia, New York,

comprised of approximately 12 attorneys and approximately 150 support staff.

20.     Upon information and belief, Defendant has engaged in unlawful employment

practices in violation of Title VII, Section 1981, and the NYSHRL. These practices include the

harassment of Plaintiffs because of their race, African American, which created a hostile work

environment, and disparate treatment of Plaintiffs and other African American employees.

These practices included, but are not limited to:

> a. Regular and repeated use of the words "nigger," "nigga," and "niggarette" made
> to or about African American employees by supervisors and other employees.
> b. Regular and repeated use of racial slurs made to or about African American
> employees by supervisors and other employees.
> c. Regular and repeated use of racial epithets made to or about African American
> employees by supervisors and other employees.
> d. Regular and repeated making of racial jokes to or about African American
> employees by supervisors and other employees.
> e. Disparate treatment of African American employees by management personnel on
> a regular basis, which included selectively scrutinizing performance, prohibiting
> Plaintiffs and other African American personnel from asking each other work
> related questions, and reprimanding Plaintiffs and other African American
> employees in front of other employees;
> f. Segregated seating in the collections department; and
> g. Ignoring Plaintiffs' repeated complaints of discrimination, harassment, and
> disparate treatment, resulting in a hostile work environment.

21.     As set forth fully below, Plaintiffs were subject to an ongoing hostile work

environment based on discriminatory conduct which occurred over a period of time and

constitutes a "continuing violation."

22.     Accordingly, consideration of the entire scope of the hostile work environment

claim, including behavior alleged outside the statutory time period, is permissible for the

purposes of assessing liability, since at least one act occurred within the statutory time period.

23.     Plaintiffs were subject to an ongoing pattern of offensive and humiliating conduct that altered the terms and conditions of their employment.

24.     Defendants displayed indifference to their employees' racially derogatory remarks, even when those remarks were made by supervisory personnel, and failed to take adequate measures to address and correct the discriminatory atmosphere, which created a hostile work environment based on race.

25.     The conduct of Defendants was done in conscious disregard of Plaintiffs' rights. Therefore, Plaintiffs are entitled to an award of punitive damages from Defendants in an amount to be determined at trial.

### a. PLAINTIFF HODGE'S CLAIMS

26.     In or about September 2007, Plaintiff Hodge began employment at Defendant R&R as a collector in the Collection Department.

27.     At all times relevant to the Complaint, Plaintiff Hodge performed her job duties in a satisfactory manner.

28.     In or about October 2008, Amanda Gonzalez had been reprimanded for using the word "nigger" on the collection floor in front of African American employees.  At that time, Lisa Desz, one of Defendant R&R's managers, asked Gonzalez to refrain from using the word "nigger" because it was offensive and not appropriate for the workplace.

29.     On or about January 7, 2009, used the phrase "nigger knocking" in the presence of Plaintiff Hodge.  Gonzalez then asked Plaintiff Hodge if she ever heard of "nigger knocking." Plaintiff Hodge informed Gonzalez that she found the phrase offensive.

30.     Later that day, Plaintiff Hodge complained to Defendant Lacoste that Gonzalez used the phrase "nigger knocking" on the collection floor.

31. Defendant Lacoste, with Plaintiff Hodge present, again asked Gonzalez to refrain from using that term in the office because it is offensive. Despite this being Gonzalez's second offense in three months, Defendants failed to take appropriate disciplinary action to eradicate the racial harassment taking place in its offices.

32. On or about October 2010, Gonzalez asked Plaintiff Hodge's supervisor, Brad Kimble, "What's up nigger?" Defendants failed to take appropriate disciplinary action to correct Gonzalez's third known use of racially offensive language on Defendant R&R's premises.

33. On or about July 1, 2011, Plaintiff Hodge asked Raymond Mendez if he would like to contribute to a collection for a pregnant co-worker. Mendez responded, "Nah nigga, we are doing one with Carina."

34. Plaintiff Hodge asked Mendez to refrain from using that term because it was offensive. Mendez replied "Should I call you niggarette then?" Plaintiff Hodge once again asked Mendez to refrain from using such offensive language.

35. That afternoon, Plaintiff Hodge reported Mendez's comment to several of her supervisors, including Defendants Lacoste and Russo.

36. On July 6, 2011, Plaintiff Hodge filed a formal complaint regarding Mendez's use of racially offensive language on the collection floor on July 2, 2011.

37. On July 19, 2011, Mendez admitted to using the terms "nigga" and "niggarette" while speaking with Plaintiff Hodge on the collection floor.

38. Despite Mendez's acknowledgment that he used racially offensive terms in Defendant R&R's offices, Defendants failed take appropriate disciplinary actions to eradicate the racial harassment taking place in its offices.

39.     On or about August 10, 2012, Plaintiff Hodge spoke briefly with Plaintiff Nathaniel while Plaintiff Hodge was sending a fax and Plaintiff Nathaniel was waiting for a call to be answered. Desz immediately ordered Plaintiffs Hodge and Nathaniel to stop talking. Upon information and belief Desz did not reprimand non-African American employees for talking while sending a fax.

40.     On or about August 14, 2012, Plaintiff Hodge made a formal complaint about the fax machine incident with Desz on August 10, 2012.

41.     Defendant Lacoste did not interview Plaintiff Nathaniel regarding the August 10 conversation, but, instead interviewed several non-African American employees who were not involved in the incident.

42.     Defendant Lacoste failed to take appropriate disciplinary action to correct Desz for discriminatorily reprimanding Plaintiffs Hodge and Nathaniel for talking at the fax machine.

43.     On or about September 4, 2012, Plaintiff Hodge complained to Defendant Lacoste that all of the African American employees were seated in a segregated area. Defendant Lacoste failed to address Plaintiff Hodge's complaint of racial segregation.

44.     In or about October 2012, Plaintiff Hodge engaged her attorneys, Frank & Associates, P.C. to represent her racial discrimination claims. On or about October 11, 2012, Frank & Associates, P.C. informed Defendant R&R that the firm was representing Plaintiff Hodge.

45.     On or about December 11, 2012, Plaintiff Hodge was asked by her immediate supervisor, Kimble, to escort another employee, Vanetta Harris, outside to help calm Harris down. Harris had been involved in a verbal altercation with Desz, after Desz glared at her for having a conversation with another employee.

46.     When Plaintiff Hodge and Harris returned to the building, they were confronted by Defendant Russo, who asked Plaintiff Hodge and Harris, "Can't you all just do some work?"

47.     Plaintiff Hodge attempted to explain the situation to Defendant Russo, but Defendant Russo refused to listen to Plaintiff Hodge.

48.     During the conversation, Plaintiff Hodge also complained that on or about November 29, 2012, Defendants had sent six (6) African American employees home for wearing jeans to the office while a client was present, while that day Rissa Nesbitt, a non-African American employee, was wearing jeans in the office while a client was present and was **not** sent home or disciplined in any manner.

49.     Kimble attempted to come into the area where Plaintiff Hodge, Defendant Russo and Harris were talking, but Defendant Russo prevented him from opening the door.

50.     On December 13, 2012, without conducting an investigation, Defendants falsely accused Plaintiff Hodge of engaging in a verbal altercation with Defendant Russo on December 11, 2012, gave her a written warning, and recommended that she contact Defendant R&R's Employee Assistance Program for anger management training due to the alleged verbal altercation.  This was the first written warning Plaintiff Hodge received in her five years of employment with Defendant R&R.

51.     Defendant Russo, however, was not accused of engaging in a verbal altercation, was not given a written warning, and was not told to contact the Employee Assistance Program for anger management training.

52.     Desz and Harris were not written up for the incident.

53.     Upon information and belief, non-African American employees were involved in verbal altercations on Defendant R&R's premises, but were not written up for those incidents.

54.     Plaintiff Hodge has not received a raise or a performance bonus since the December 11, 2012 incident, purportedly because of a "wage freeze" instituted by Defendant R&R.

55.     Upon information and belief, since December 2012, Defendant R&R has given several employees raises and performance bonuses, and hired new employees at significantly higher rates of pay than its current employees, despite the alleged "wage freeze."

56.     In or about January 2013, Plaintiff Hodge was interviewed by the EEOC in regards to a claim of discrimination filed against Defendant R&R by Kimble.

## b. PLAINTIFF HAGGOOD'S CLAIMS

57.     On or about January 31, 2012, Defendant Haggood began employment with Defendant R&R as a collector in the Collection Department.

58.     In or about August 2012, Plaintiff Haggood was a member of the Dormant Judgment Group, managed by Kimble, an African American male.  The Dormant Judgment Group was comprised mainly of African American employees, and the Group was seated in an area segregated from non-African American employees.

59.     During the week of August 13, 2012, Plaintiffs Haggood and Nathaniel were sitting together during a break along with two (2) other African American employees.  Desz stood up and glared at them.  This made Plaintiffs Haggood and Nathaniel extremely uncomfortable because they were being watched at all times, including personal break time.

60.     On or about August 17, 2012, Plaintiff Haggood asked a co-worker how she was doing after her grandmother's death.  At the time, Plaintiff Haggood was waiting for a call to be answered.

61.     Desz berated Plaintiff Haggood for talking to his co-worker.   At the same time,
non-African American co-workers were engaging in personal conversations during work hours
on the collection floor.

62.     Later that same morning, Desz switched seats with another employee, Rosette
Telemaque, so that she could watch Plaintiff Haggood work.

63.     Around 11 a.m. that morning, Desz had another manager, Gina Gottlemann, sit in
Telemaque's seat so that Gottleman could watch Plaintiff Haggood work.

64.     Plaintiff Haggood was told by another employee he had overheard Desz say she
was "on a mission" the morning of August 17, 2012.

65.     Upon information and belief, Desz singled out African American employees for
excessive scrutiny.

66.     In or about the middle of August 2012, the Dormant Judgment Group, including
Plaintiffs Haggood and Nathaniel, had a meeting with Kimble in the lunch room.  Desz listened
to the meeting through the cafeteria door.

67.     On or about August 22, 2012, Plaintiff Haggood made a formal complaint to
Defendant Russo that Desz listened to the meeting through the cafeteria door.

68.     On or about August 22, 2012, Plaintiff Haggood asked Plaintiff Nathaniel a work-
related question about the foreclosure process, because Kimble was not available.  Desz berated
Plaintiffs Haggood and Nathaniel for engaging in this conversation, even though Plaintiff
Haggood attempted to explain to Desz that it was a work-related conversation.

69.     Plaintiff Haggood complained to Defendant Lacoste that Desz did not allow
African American employees to ask each other work related questions

70.     Upon information and belief, non-African American employees were not berated for asking each other work related questions.

71.     Defendant Lacoste failed to take appropriate disciplinary actions against Desz for her actions against Plaintiff Haggood and the Dormant Judgment Group.

72.     Upon information and belief, other managers of Defendant R&R did not prohibit employees from asking each other work related questions and having brief conversations while waiting for calls to be answered.

73.     On or about September 4, 2012, Defendants dismantled the Dormant Judgment Group and transferred Plaintiff Haggood to a different collections group, under circumstances giving rise to an inference of discrimination, after Kimble filed a claim of race discrimination against Defendant R&R.

74.     Plaintiff Haggood was transferred to another African American supervisor, Wright.

75.     Plaintiff Haggood suffered an adverse employment action when he was transferred to a different collections group because he lost the opportunity to earn bonus compensation based on his collection goals in the Dormant Judgment Group.

76.     On or about April 10, 2013, Plaintiff Haggood was terminated.

### c. PLAINTIFF NATHANIEL'S CLAIMS

77.     In or about July 2011, Plaintiff Nathaniel began employment at Defendant R&R as a collector in the Collection Department.

78.     In or about August 2012, Plaintiff Nathaniel was a member of the Dormant Judgment Group, managed by Kimble, an African American male.  The Dormant Judgment

Group was comprised mainly of African American employees, and the Group was seated in an area segregated from non-African American employees.

79. On or about August 10, 2012, Plaintiff Nathaniel engaged in a brief conversation with Plaintiff Hodge while Plaintiff Hodge was sending a fax and Plaintiff Nathaniel was waiting for a call to be answered. Desz immediately ordered Plaintiffs Hodge and Nathaniel to stop talking. Upon information and belief Desz did not reprimand non-African American employees for talking while at the fax machine.

80. Defendant Lacoste did not interview Plaintiff Nathaniel regarding his conversation with Plaintiff Hodge at the fax machine on August 10, 2012, but, instead interviewed several non-African American employees who were not involved in the incident.

81. Defendant Lacoste failed take appropriate disciplinary actions to correct Desz for discriminatorily reprimanding Plaintiffs Hodge and Nathaniel for talking at the fax machine.

82. During the week of August 13, 2012, Plaintiffs Haggood and Nathaniel were sitting together during a break along with two (2) other African American employees. Desz stood up and glared at them. This made Plaintiffs Haggood and Nathaniel extremely uncomfortable because they were being watched at all times, including personal break time.

83. In or about the middle of August 2012, the Dormant Judgment Group, including Plaintiffs Haggood and Nathaniel, had a meeting with Kimble in the lunch room. Desz listened to the meeting through the cafeteria door.

84. On or about August 22, 2012, Plaintiff Haggood asked Plaintiff Nathaniel a work-related question about the foreclosure process, because Kimble was not available to ask. Desz berated Plaintiffs Haggood and Nathaniel for engaging in this conversation, even though Plaintiff Haggood attempted to explain to Desz that it was a work-related conversation.

85. Upon information and belief, non-African American employees were not berated for engaging in work related conversations.

86. Defendant Lacoste failed take appropriate disciplinary actions against Desz for her actions against Plaintiff Nathaniel and the Dormant Judgment Group.

87. On or about September 4, 2012, Defendants dismantled the Dormant Judgment Group and transferred Plaintiff Nathaniel to a different collections group, under circumstances giving rise to an inference of discrimination, after Kimble filed a claim of race discrimination against Defendant R&R.

88. Plaintiff Nathaniel was transferred to another African American supervisor, Wright.

89. Plaintiff Nathaniel suffered an adverse employment action when he was transferred to a different collections group because he lost the opportunity to earn bonus compensation based on his collection goals in the Dormant Judgment Group.

90. In or about early November 2012, Defendant reduced the number of clients that were assigned to Plaintiff Nathaniel, which made it nearly impossible for Plaintiff Nathaniel to reach his collection goals and earn the performance bonuses associated with achieving those goals.

91. Throughout November 2012, Plaintiff Nathaniel asked Defendant Russo and his then Manager, Rich Szollosi, a white male, for help in reaching his collection goals. Defendant Russo and Szollosi ignored Plaintiff Nathaniel's requests and provided no assistance or advice to help him reach his collection goals.

92. In or about January 2013, Plaintiff Nathaniel was interviewed by the EEOC in regards to a claim of discrimination filed against Defendant R&R by Kimble.

93.     On or about January 2, 2013, Plaintiff Nathaniel was seated separately from all other employees. Plaintiff Nathaniel complained to Defendant Russo, Szollosi, and Defendant R&R's owner, Frank Rothman about his seating assignment. Plaintiff Nathaniel's complaints were ignored.

94.     On or about January 5, 2013, Plaintiff Nathaniel was terminated by Defendant Lacoste.

## THE FIRST CLAIM FOR RELIEF
*(Race Discrimination in Violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e et. seq.)*

95.     Plaintiffs incorporate by reference and repeat and re-allege each and every allegation as if more fully set forth herein.

96.     Defendants discriminated against Plaintiffs in the terms and conditions of their employment on the basis of their race in violation of Title VII by taking adverse employment actions based on their race.

97.     Plaintiffs suffered damages as a result of Defendants' unlawful acts, including past and future lost wages and benefits, past and future physical and emotional distress, punitive damages, attorney's fees and the costs of bringing this action.

## THE SECOND CLAIM FOR RELIEF
*(Race Discrimination in Violation of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 et. seq.)*

98.     Plaintiffs incorporate by reference and repeat and re-allege each and every allegation as if more fully set forth herein.

99.     Defendants discriminated against Plaintiffs in the terms and conditions of their employment on the basis of their race in violation of Section 1981 by taking adverse employment actions based on their race.

100.   Defendants acted with malice and/or reckless indifference to Plaintiffs'
constitutionally protected rights.

101.   Plaintiffs suffered damages as a result of Defendants' unlawful acts, including
past and future lost wages and benefits, punitive damages, attorney's fees and the costs of
bringing this action.

## THE THIRD CLAIM FOR RELIEF
*(Race Discrimination in Violation of the New York State Human Rights Law, N.Y. Exec. L. §§*
*296 et. seq.)*

102.   Plaintiffs incorporate by reference and repeat and re-allege each and every
allegation as if more fully set forth herein.

103.   Defendants discriminated against Plaintiffs in the terms and conditions of their
employment in violation of the NYSHRL by taking adverse employment actions against
Plaintiffs based on their race.

104.   Plaintiffs suffered damages as a result of Defendants' unlawful acts, including
compensatory damages, past and future lost wages and benefits, and past and future physical and
emotional distress.

## THE FOURTH CLAIM FOR RELIEF
*(Retaliation in Violation of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 et. seq.)*

105.   Plaintiffs incorporate by reference and repeat and re-allege each and every
allegation as if more fully set forth herein.

106.   Defendants retaliated against Plaintiffs for opposing discrimination on the basis of
race by taking adverse employment actions against Plaintiffs after they reported acts of racial
discrimination.

107.   Defendants acted with malice and/or reckless indifference to Plaintiffs'
constitutionally protected rights.

108. Plaintiffs suffered damages as a result of Defendants' unlawful acts, including past and future lost wages and benefits, punitive damages, attorney's fees and the costs of bringing this action.

## THE FIFTH CLAIM FOR RELIEF

*(Retaliation in Violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e et. seq.)*

109. Plaintiffs incorporate by reference and repeat and re-allege each and every allegation as if more fully set forth herein.

110. Defendants retaliated against Plaintiffs for opposing discrimination on the basis of race by taking adverse employment actions against Plaintiffs after they reported acts of racial discrimination.

111. Plaintiffs suffered damages as a result of Defendants' unlawful acts, including past and future lost wages and benefits, past and future physical and emotional distress, punitive damages, attorney's fees and the costs of bringing this action.

## THE SIXTH CLAIM FOR RELIEF

*(Retaliation in Violation of the New York State Human Rights Law, N.Y. Exec. L. §§ 296 et. seq.)*

112. Plaintiffs incorporate by reference and repeat and re-allege each and every allegation as if more fully set forth herein.

113. Defendants retaliated against Plaintiffs for opposing discrimination on the basis of race by taking adverse employment actions against Plaintiffs after they reported acts of racial discrimination.

114. Plaintiffs suffered damages as a result of Defendants' unlawful acts, including past and future lost wages and benefits, past and future physical and emotional distress, and compensatory damages.

## THE SEVENTH CLAIM FOR RELIEF

*(Hostile Work Environment in Violation of the Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e et. seq.)*

115.    Plaintiffs incorporate by reference and repeat and re-allege each and every allegation as if more fully set forth herein.

116.    Defendants intentionally discriminated against Plaintiffs in the terms, conditions, and privileges of their employment.

117.    Defendants created and maintained a work environment of pervasive discriminatory intimidation, ridicule, and severe insults that altered the conditions of Plaintiffs employment.

118.    Defendants created and maintained a work environment where disparate treatment of African American employees and the use of racial slurs, epithets, and jokes on the collection floor interfered with Plaintiffs' ability to perform their job functions.

119.    Plaintiffs were subjected to an ongoing pattern of racially offensive and humiliating conduct.

120.    A reasonable employee under the same circumstances as Plaintiffs would have found the environment hostile in a manner that would adversely alter the conditions of employment.

121.    Plaintiffs suffered damages as a result of Defendants' unlawful acts, including past and future lost wages and benefits, past and future physical and emotional distress, punitive damages, attorney's fees and the costs of bringing this action.

## THE EIGHTH CLAIM FOR RELIEF

*(Hostile Work Environment in Violation of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 et. seq.)*

122.    Plaintiffs incorporate by reference and repeat and re-allege each and every allegation as if more fully set forth herein.

123. Defendants intentionally discriminated against Plaintiffs in the terms, conditions, and privileges of their employment.

124. Defendants created and maintained a work environment of pervasive discriminatory intimidation, ridicule, and severe insults that altered the conditions of Plaintiffs employment.

125. Defendants created and maintained a work environment where disparate treatment of African American employees and the use of racial slurs, epithets, and jokes on the collection floor interfered with Plaintiffs' ability to perform their job functions.

126. Plaintiffs were subjected to an ongoing pattern of racially offensive and humiliating conduct.

127. A reasonable employee under the same circumstances as Plaintiffs would have found the environment hostile in a manner that would adversely alter the conditions of employment.

128. Plaintiffs suffered damages as a result of Defendants' unlawful acts, including past and future lost wages and benefits, past and future physical and emotional distress, punitive damages, attorney's fees and the costs of bringing this action.

## THE NINTH CLAIM FOR RELIEF

*(Hostile Work Environment in Violation of the New York State Human Rights Law, N.Y. Exec. L. §§ 296 et. seq.)*

129. Plaintiffs incorporate by reference and repeat and re-allege each and every allegation as if more fully set forth herein.

130. Defendants intentionally discriminated against Plaintiffs in the terms, conditions, and privileges of their employment.

131. Defendants created and maintained a work environment of pervasive discriminatory intimidation, ridicule, and severe insults that altered the conditions of Plaintiffs employment.

132. Defendants created and maintained a work environment where disparate treatment of African American employees and the use of racial slurs, epithets, and jokes on the collection floor interfered with Plaintiffs' ability to perform their job functions.

133. Plaintiffs were subjected to an ongoing pattern of racially offensive and humiliating conduct.

134. A reasonable employee under the same circumstances as Plaintiffs would have found the environment hostile in a manner that would adversely alter the conditions of employment.

135. Plaintiffs suffered damages as a result of Defendants' unlawful acts, including past and future lost wages and benefits, past and future physical and emotional distress, and compensatory damages.

## THE TENTH CLAIM FOR RELIEF
*(Aiding and Abetting in Violation of the New York State Human Rights Law, N.Y. Exec. L. §§ 296 et. seq.)*

136. Plaintiffs incorporate by reference and repeat and re-allege each and every allegation as if more fully set forth herein.

137. Defendants Russo and Lacoste aided and abetted Defendant R&R in discriminating against Plaintiffs, retaliating against Plaintiffs, and allowing a hostile work environment to exist at Defendant R&R by repeatedly ignoring Plaintiffs' complaints of racial discrimination, allowing the use of racial slurs, epithets, and jokes on the collection floor, failing to adequately discipline employees who used racially offensive language and who targeted

African American employees for discipline, and for allowing adverse employment actions to be taken against Plaintiffs.

## DEMAND FOR JURY TRIAL

138.    Plaintiffs incorporate by reference and repeat and re-allege each of the preceding paragraphs as if fully set forth herein.

139.    Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a.    Accept jurisdiction over this matter;

b.    Declare that Defendants' actions were part of a pattern and practice of unlawful, systemic discrimination and/or retaliation due to Plaintiffs race and were retaliatory, and were a custom, policy or practice that was ongoing and continuous against Plaintiffs;

c.    Order Defendants to compensate Plaintiffs for their past and future loss of wages and benefits, plus interest;

d.    Enter judgment in favor of Plaintiffs for such amount as may be awarded by a jury for compensatory damages for their emotional suffering and loss of enjoyment of life;

e.    Enter judgment in favor of Plaintiffs for such amount as may be awarded by a jury for punitive damages;

f.    Reinstate Plaintiffs to a positions comparable to their former positions or, in lieu of reinstatement, front and back pay;

g.    Award Plaintiffs all costs and reasonable attorneys' fees incurred in connection with this action; and

h.     Grant such additional or alternative relief as may appear to this Court to be just

and equitable.

Dated: Farmingdale, New York
      April 14, 2014

                                        FRANK & ASSOCIATES, P.C.
                                        *Attorneys for Plaintiff*

                              By:     /s/
                                        Peter A. Romero
                                        500 Bi-County Boulevard, Suite 112N
                                        Farmingdale, NY 11735
                                        Tel: (631) 756-0400
                                        promero@laborlaws.com